No. 24-12128

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RUFINO ROBELO-GALO,
*Defendant-Appellant.*

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Panama City Division

INITIAL BRIEF OF APPELLANT

**JOSEPH F. DEBELDER**
Federal Public Defender
Florida Bar No. 193800
Laura B. Silva
DC Bar No. 90012716
227 N. Bronough Street, Ste. 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
joseph_debelder@fd.org
laura_silva@fd.org

Attorneys for Appellant

No. 24-12128

United States v. Rufino Robelo-Galo

**APPELLANT'S CERTIFICATE OF INTERESTED PERSONS**

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit

Rule 26.1-2, the following persons have an interest in the outcome of this case:

Ahmed, Ainuddin, Assistant United States Attorney

Barragan, Soul, Co-Defendant

Barron, Ricardo Heredia, Co-Defendant

Bodiford, Larry, United States Magistrate Judge

Brewer, Mary Ann, Co-Defendant

Burke, Katie Denise, Defense Appellate Attorney

Bussey, Jr., Lee Parker, Co-Defendant

Cadenas-Baez, Jesus, Co-Defendant

Cadenas-Baez, Juan Jose, Co-Defendant

Coody, Jason, United States Attorney

Davies, Robert, Assistant United States Attorney

DeBelder, Joseph, Federal Public Defender

Dingus, Jonathan Wesley, CJA Appointed Defense Attorney

Fairchild, Katie, Retained Defense Attorney

Forbes, Alicia H., Assistant United States Attorney

Frank, Michael, United States Magistrate Judge

Gilbert, Rowdy Dewayne, Co-Defendant

Gonzalez-Flores, Octavio, Co-Defendant

Gullett, Christopher, Co-Defendant

Gullett, Jr., Frank Eben, Co-Defendant

Harper, Jr., Robert Augustus, CJA Appointed Defense Attorney

Hernandez-Estrada, Nestor Jose, Co-Defendant

Jones, Gary R., United States Magistrate Judge

Kelly, Jack Allen, Co-Defendant

Kent, Bobby Jene, Co-Defendant

Kim, Alicia Hyunjoo, Assistant United States Attorney

Knight, Edwin F., Assistant United States Attorney

Lindsey, Herbert Stanley, Assistant United States Attorney

Littleton, Gayle, Assistant United States Attorney

Register, III, Lennard B., Assistant United States Attorney

Robelo-Galo, Rufino, Appellant

Smoak, Richard, United States District Judge

Stone, Cora Rebecca, Co-Defendant

Walker, Mark E., United States District Judge

## STATEMENT REGARDING ORAL ARGUMENT

The issue raised in this appeal addresses the language and meaning of U.S.S.G. § 1B1.13(b)(3), as amended on November 1, 2023. This Court has not addressed this issue previously and as such, the Court might consider oral argument appropriate.

# TABLE OF CONTENTS

<u>Contents</u>                                                                                    <u>Page</u>

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS ............... C 1 of 3

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS ...................................................................... iv

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUE .............................................................. 2

STATEMENT OF THE CASE ............................................................... 3

   (i) <u>Course of Proceedings and Dispositions in the Court Below</u> ..................... 3

   (ii) <u>Statement of the Facts</u> ................................................................ 5

      A.  As the Government conceded, Appellant's father is
          incapacitated. ........................................................................ 5

      B.  There are no other caregivers available other than Appellant. ............. 8

         1.  Appellant's father's current caregiver is no longer able to
            provide necessary care. ................................................... 8

         2.  Appellant's children's affidavits established that Appellant
            is the only other caregiver available to replace Ms. Reyna. .......... 9

   (iii) <u>Standard of Review</u> .................................................................. 12

SUMMARY OF THE ARGUMENT ..................................................... 13

# TABLE OF CONTENTS CONTINUED

ARGUMENT ...................................................................................................15

## ISSUE

The district court abused its discretion in finding Appellant's son is an available caregiver to Appellant's incapacitated father under U.S.S.G. § 1B1.13(b)(3)(C). .....................15

A.  The standard for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) and U.S.S.G. § 1B1.13(b)(3)(C)....................15

B.  The district court abused its discretion by using an erroneous standard for "available caregiver" when it failed to consider the degree of care needed by Appellant's father in determining whether Appellant's son is an "available caregiver." ................................17

C.  The district court abused its discretion by making an unreasonable finding of fact that Appellant's son was an available caregiver despite uncontroverted and overwhelming evidence that he was unavailable.........................22

CONCLUSION.................................................................................................. 26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ....... 27

CERTIFICATE OF SERVICE ........................................................................ 28

## TABLE OF CITATIONS

**Cases**                                                                      **Page**

*D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016) .................................................18, 19

*United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) ................................ 20, 24

*United States v. Gonzalez*, 2021 WL 4066897 (S.D. Fla. Sep. 7, 2021) .... 5, 17, 24, 25

*United States v. Harris*, 989 F.3d 908 (11th Cir. 2021) ........................................... 12

*United States v. Hernandez*, No. 1:16cr20091, 2020 WL 4343991 (S.D. Fla. Apr. 3, 2020)................................................................................................................. 21, 22

*United States v. Mendoza*, 16-CR-00459-SI-1, 2022 WL1605671 (N.D. Cal. May 20, 2022)....................................................................................................................20

*UnitedStates v. Vanlaar*, 1:13-CR-119, 2022 WL 2290618 (M.D.N.C. June 24,2022) ........................................................................................................................ 20, 23

## Statutes

18 U.S.C. § 3231 ........................................................................................................ 1

18 U.S.C. § 3553(a) ................................................................................................ 4, 5

18 U.S.C. § 3582(c)(1) ....................................................................................... 1, 3, 15

18 U.S.C. § 3582(c)(1)(A) ....................................................................................12, 16

18 U.S.C. § 3582(c)(1)(A)(i) ....................................................................................15

18 U.S.C. § 924(c)(1)(A)(i) ....................................................................................... 3

18 U.S.C.§ 3553(a) ..................................................................................................15

# TABLE OF CITATIONS CONTINUED

21 U.S.C. § 841(b)(1)(A)(viii) .................................................................. 3

21 U.S.C. § 846 ........................................................................................ 3

28 U.S.C. § 1291 ...................................................................................... 1

8 U.S.C. § 1232(c)(3)(A) ........................................................................ 18

U.S.C. § 994(a)(2)(C) ............................................................................. 16

**Rules**

Federal Rule of Appellate Procedure 32(a)(5) ..................................... 27

Federal Rule of Appellate Procedure 32(a)(6) ..................................... 27

Federal Rule of Appellate Procedure 32(a)(7)(B) ................................ 27

Federal Rule of Appellate Procedure 32(f) ........................................... 27

U.S.S.G. § 1B1.13 .............................................................................. 15, 16

U.S.S.G. § 1B1.13(b)(3) ................................................................... i, 16, 22

U.S.S.G. § 1B1.13(b)(3)(C) ........................... ii, 2, 3, 14, 15, 16, 19, 25

**Other Authorities**

Adam Isacson, et al., *Halfway to the U.S.: A Report from Honduras on Migration*, WASHINGTON OFFICE ON LATIN AMERICA (June 2, 2023), www.wola.org/wp-content/uploads/2023/06/2023-06_honduras_report.pdf .............................. 23

v

## STATEMENT OF JURISDICTION

The United States District Court, Northern District of Florida, Panama City Division, had jurisdiction pursuant to 18 U.S.C. § 3231. The district court denied Appellant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) on June 20, 2024. ECF 788. Appellant filed a notice of appeal on July 1, 2024. ECF 789. This appeal is from a final judgment or order that disposes of all parties' claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be taken to the Supreme Court.

## STATEMENT OF THE ISSUE

The district court abused its discretion in finding Appellant's son is an available caregiver to Appellant's incapacitated father under U.S.S.G. § 1B1.13(b)(3)(C).

## STATEMENT OF THE CASE

(i)    <u>Course of Proceedings and Dispositions in the Court Below</u>

Appellant was indicted and pleaded guilty in 2011 to charges of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846; and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). ECF 401, p. 1. He was sentenced to a total of 354 months in federal prison, ECF 460, which the district court later reduced to 296 months. ECF 639.

On February 5, 2024, Appellant filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1) and U.S.S.G. § 1B1.13(b)(3)(C). ECF 778. Appellant filed the motion because his incapacitated father's current caregiver is unable to continue caring for him due to her own medical conditions and Appellant is the only available caregiver for his father. *Id.* While the Government opposed the motion, it acknowledged that Appellant's father is incapacitated. ECF 784, p. 1; ECF 783, pp. 4-5. The Government argued that Appellant "has not met his burden to demonstrate that he is the only available caregiver, inasmuch as [his] PSR lists five children in Honduras who may be available to care for their grandfather." ECF 784, p. 1; ECF 784, p. 4. The district court denied the motion without prejudice, finding that

3

Appellant had failed to meet his "burden to demonstrate why his children in Honduras are not available to take their mother's place as a caregiver to his father." ECF 784, p. 2.

On June 17, 2024, Appellant submitted a renewed motion including sworn statements from three of Appellant's children stating they are unavailable to be a caregiver for Appellant's father and there are no other alternatives. ECF 785; ECF 785-2; ECF 785-3; ECF 785-4; and ECF 785-5. Out of Appellant's five children, one passed away, one's whereabouts are unknown, and two reside in the United States. ECF 785-2; ECF 785-3; ECF 785-4; and ECF 785-5. The fifth child lives in Honduras, but four hours away from Appellant's father; he works full-time to support his young children and submitted a sworn statement that he was unavailable to care for his grandfather. ECF 785-5. The Government adopted its argument in response to the prior motion. ECF 787, p. 3. Further, the Government did not contest Appellant's children's unavailability to care for their grandfather, deferring to the district court's discretion as to whether Appellant met his threshold burden that no other caregivers were available. *Id*. The Government also argued that the sentencing factors of 18 U.S.C. § 3553(a) should result in a denial of the renewed motion. *Id*.

4

The district court denied the renewed motion. ECF 788. The district court based the denial on a finding that Appellant's adult child who lived in Honduras was an available caregiver to Appellant's father. This finding was made despite the uncontroverted evidence in Appellant's children's sworn statements that they were all unavailable to care for their grandfather. *Id*. at 2. The district court wrote that "adult children who face[] the ordinary constraints of their daily lives and [are] within hours of the incapacitated family member" are available caregivers because "a finding of compassionate release cannot rest solely on avoiding such inconvenience for a convicted inmate's family." *Id*. (citing *United States v. Gonzalez*, 2021 WL 4066897, at *5 (S.D. Fla. Sep. 7, 2021)).

(ii)    <u>Statement of the Facts</u>

**A. As the Government conceded, Appellant's father is incapacitated.**

Appellant is the only child of Jose Lorenzo Rodriguez Robelo ("Mr. Jose Lorenzo") and Angela Adilia Galo (now deceased). *See* ECF 401, ¶ 177; ECF 778-1. Mr. Jose Lorenzo currently resides in Catacamas, Honduras. *See* ECF 778-2.

In the years since Appellant's arrest and imprisonment, Mr. Jose Lorenzo's conditions have rendered him incapable of self-care. ECF 778-3. He cannot walk and

is confined to a bed or chair 24-hours a day. ECF 778-4. The act of standing upright and taking a step is impossible without a caregiver's aid. *Id.*

Basic activities of daily living, defined as "necessary for survival and a measure of autonomy," include eating, dressing, transferring (e.g. from bed, chair), grooming, toilet use, etc. ECF 785, pp. 3-4. Without a caregiver, Mr. Jose Lorenzo can perform none of those activities. *Id.* at 4. He cannot drive to buy groceries, cook, or serve himself food. *Id.* He cannot use the bathroom unassisted and must sit on a chair to bathe. *Id.* He is incapable of cleaning his home or clothes. *Id.* He offers no physical strength of any kind as he cannot lift weight or tolerate physical activity. *See id.* He lacks the spirit to get dressed in the morning, but even on a good day, he is unable to do so himself. *Id.* His sole outings consist of occasionally sitting under a tree, which—again—he cannot do alone. *Id.*

Mr. Jose Lorenzo is utterly reliant on familial support as palliative care is not available at the community level in Honduras. *Id.* Due to the poverty levels in rural Honduras, Mr. Jose Lorenzo has no access to community assistance such as transportation to hospitals and clinics, obtaining advanced medication and treatment, mobility aids, etc. *Id.* Put simply, Mr. Jose Lorenzo cannot survive without family care.

Mr. Jose Lorenzo's survival depends upon having a full-time caregiver. Old age and fragility alone do not fully encapsulate his current condition. Per medical diagnosis, he suffers from rheumatoid arthritis, chronic gastritis, and depression, all of which contribute to his incapacitation. ECF 778-6. In his physical state, medical care is critical, yet Mr. Jose Lorenzo cannot administer his own medication or visit his doctor without assistance, although adequate and necessary treatment of his medical conditions requires monthly check-ups. *Id.*; ECF 778-4. Practitioners at the Medical College of Honduras have ordered Mr. Jose Lorenzo to be cared for by another. ECF 778-6.

Rheumatoid Arthritis ("RA") is "a multisystemic, chronic inflammatory disease characterized by destructive synovitis. It can affect all joints, but mainly involves the small joints of the hand and foot with erosive changes. RA is a progressive chronic disease resulting in decreased functional capacity and quality of life, increased morbidity and mortality." ECF 778, p. 9. Simply stated, elderly patients with RA experience the "loss of [] ability to perform ADLs [(activities of daily living are bathing, dressing, transferring from a bed to a chair or out of a chair, using a toilet, or eating)] and mobility functions [that] often leads to the loss of an older person's ability to live independently . . . ." *Id.* Greater degrees of disability

are linked to persistence of disease activity where "approximately 10% of older patients have difficulty performing the basic activities of daily living and experience functional impairment." *Id*. When RA is aggravated by geriatric syndromes, such as "depression, frailty, cognitive impairment, falls and/or nutritional deficits" it leads to "a lower success rate in the treatment of RA and a tendency to depression in these patients." *Id*. at 9-10. RA has, independently and combined with his other medical conditions, reduced Mr. Jose Lorenzo to being in an incapacitated state. ECF 778-6.

The Government has conceded Mr. Jose Lorenzo's incapacitation. ECF 784, p. 1; ECF 783, pp. 4-5.

### B. There are no other caregivers available other than Appellant.

1. Appellant's father's current caregiver is no longer able to provide necessary care.

For the past five years, Mr. Jose Lorenzo's sole caregiver has been Appellant's previous partner, Ms. Reyna Mejia Gutierrez ("Ms. Reyna"). *See* ECF 778-2. Ms. Reyna cooks and serves food for Mr. Jose Lorenzo. ECF 778-4. Ms. Reyna cleans his living area. *Id*. Ms. Reyna carries and moves Mr. Jose Lorenzo wherever he needs, including the bathroom. *Id*. Ms. Reyna ensures Mr. Jose Lorenzo is bathed and clothed. *Id*. Without Ms. Reyna, Mr. Jose Lorenzo would be unable to accomplish the daily functions necessary to survive.

Unfortunately, due to the deterioration of her own health, Ms. Reyna finds herself unable to continue care for Mr. Jose Lorenzo. *See* ECF 778-7. Medical complications from diabetes have significantly weakened her strength and stamina. Ms. Reyna cannot exert force necessary to move or carry Mr. Jose Lorenzo any longer—she is at her limit. *Id.* Her condition results in a "natural greater decline in muscle strength." ECF 778, p. 11. Ms. Reyna's fluctuation in blood sugar reduces her to a state of exhaustion and fatigue, which "may even persist after glycemic control is achieved." *Id.* In other words, Ms. Reyna needs care herself. She no longer possesses the ability or capacity, mentally and physically, to care for an incapacitated person.

> 2. Appellant's children's affidavits established that Appellant is the only other caregiver available to replace Ms. Reyna.

Appellant is the only available caregiver to replace Ms. Reyna. Mr. Jose Lorenzo's wife is deceased. ECF 778-1. Mr. Jose Lorenzo does not receive a salary, retirement, or government assistance to hire a private caregiver. ECF 778-4. When she occasionally runs an errand, Ms. Reyna asks her neighbor to check-in on Mr. Jose Lorenzo; but, if the neighbor is unable to, Mr. Jose Lorenzo stays alone and immobile. *Id.*

While Appellant and Ms. Reyna have five children, none are available to act as Mr. Jose Lorenzo's caregiver.[1]

One child, Raul Robelo ("Mr. Raul"), died on January 6, 2022. ECF 785-2.

Two other children, Kenia Yojana Robelo ("Ms. Kenia") and Osman Ariel Robelo ("Mr. Osman"), live in the United States. ECF 785-3; ECF 785-4; ECF 785-5. Both Ms. Kenia and Mr. Osman are married and have children. *Id*. Neither can relocate to Honduras. *Id*. Ms. Kenia left Honduras to escape an abusive partner, the father of her child. *Id*. If she returns to Honduras to care for Mr. Jose Lorenzo, she puts herself and her son at risk. *Id*. Mr. Osman recently immigrated to the United States in search of better job opportunities. *Id*. Because he has children, a higher living wage, job security, and increased opportunities for professional growth, he has ensured his children of a better future and cannot abandon his current work and familial responsibilities to return to Honduras. *Id*. If he were to return to Honduras with his family to care for Mr. Jose Lorenzo, they would face extreme socioeconomic barriers. *Id*. Thus, Ms. Kenia and Mr. Osman are unavailable. ECF 788, p. 2.

---

[1] The five children are Raul Robelo, Kenia Y. Robelo, Osman A. Robelo, Jose L. Robelo, and Elmer R. Robelo.

A fourth child's, Jose Lorenzo Robelo's ("Mr. Jose"), whereabouts are unknown. The family has not had contact with him since 2022. *See* ECF 785-3; ECF 785-4; and ECF 785-5. The last known fact about his location is that he attempted to enter the United States but was detained. *Id.* He is unavailable to take care of Mr. Jose Lorenzo. *Id.*; ECF 788, pp. 1-2.

The district court denied the renewed motion because it found that the fifth child, Elmer Rufino Robelo ("Mr. Elmer"), is an available caregiver. ECF 788, p. 2. Mr. Elmer is the only grandchild of Mr. Jose Lorenzo who still resides in Honduras; however, he lives in a city four hours away from Mr. Jose Lorenzo. ECF 785-3; ECF 785-4; and ECF 785-5. Ms. Kenia, Mr. Osman, and Mr. Elmer's sworn statements outline why Mr. Elmer is not available. *See id.* All three children detailed that Mr. Elmer is limited by geography, employment, financial, and child rearing obligations. *Id.* Apart from living four hours away, Mr. Elmer is employed full-time in a country where job security is a leading issue of migration. ECF 785-5. Quitting his job creates financial uncertainty. As a father of two young children, Mr. Elmer is required to maintain their financial stability when Appellant can care for Mr. Jose Lorenzo. ECF 785-5. For those reasons, Mr. Elmer provided a sworn statement that he was not

11

available as a caregiver for his grandfather, Mr. Jose Lorenzo (Appellant's father).

ECF 785-5.

(iii)    Standard of Review

This Court reviews a district court's ruling on a motion pursuant to 18 U.S.C.

§ 3582(c)(1)(A) for abuse of discretion. *United States v. Harris*, 989 F.3d 908, 911

(11th Cir. 2021). "A district court abuses its discretion if it applies an incorrect legal

standard, follows improper procedures in making its determination, or makes clearly

erroneous factual findings." *Id*.

12

## SUMMARY OF THE ARGUMENT

The district court applied an incorrect legal standard for "available caregiver" and made clearly erroneous factual findings as to Appellant's son's availability to care for his grandfather. The plain language of the requirement for an "available caregiver" compels the district court to consider the degree of care needed by the incapacitated parent in determining whether another possible caregiver could be considered an "available caregiver." But here, the district court ignored Appellant's incapacitated father's need for full-time care in determining Appellant's son's availability and turned its analysis to whether Appellant's son would be merely inconvenienced by providing care.

Moreover, the district court ignored the undisputed and overwhelming evidence that Appellant's son is not an available caregiver. Multiple family members, including Appellant's son, swore Appellant's son's living arrangement, location, financial obligations, and obligations to his own young children would interfere with the 24-hour commitment of required care he would need to provide. The district court did not account for facts relevant to Appellant's father's incapacitation, including his need for full-time care, nor the realities of childcare or job insecurity in Honduras. ECF 788, p. 2.

The district court erred in using an incorrect standard for "available caregiver" and thus unreasonably found Appellant's son was available to provide full-time care despite financial, personal, and geographic barriers. The error violated the plain language of U.S.S.G. § 1B1.13(b)(3)(C) and wrongly heightened Appellant's burden to meet extraordinary and compelling reasons that warrant a reduction in sentence.

# ARGUMENT

> The district court abused its discretion in finding Appellant's son is an available caregiver to Appellant's incapacitated father under U.S.S.G. § 1B1.13(b)(3)(C).

## A. The standard for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) and U.S.S.G. § 1B1.13(b)(3)(C).

Courts have authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). A court may reduce the term of imprisonment when "the Defendant, [] fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." *Id.* Once exhausted, a district court determines whether a sentence reduction is warranted through three considerations. First, a district court must determine whether "extraordinary and compelling reasons" support the sentence reduction. § 3582(c)(1)(A)(i)). Second, the court must consider whether the sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. Third, the district court must consider other relevant sentencing factors under 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13.

15

Congress expressly delegated to the Sentencing Commission the task of determining what circumstances should be considered "extraordinary and compelling" within the meaning of 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. §§ 994(a)(2)(C), (t). In November 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13 to include certain family circumstances of the defendant in defining "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b)(3). "[T]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" now constitutes an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13(b)(3)(C).

In this case, the district court erred when it denied Appellant's renewed motion based solely on an erroneous finding that Appellant's son is an available caregiver for Appellant's father, Mr. Jose Lorenzo. The determination was an abuse of discretion as it hinged on the application of an incorrect interpretation of what constitutes an "available caregiver" as well as erroneous and flawed factual findings based on the uncontroverted evidence of Appellant's son's unavailability. The district court equated Mr. Elmer's reasons for unavailability to a mere "discomfort": Mr. Elmer "face[s] the ordinary constraints of [] daily li[fe]and [is] within hours of the incapacitated family member" hence "'a finding of

16

compassionate release cannot rest solely on avoiding such inconvenience for a convicted inmate's family.'" ECF 788 (quoting *United States v. Gonzalez*, 2021 WL 4066897 at *5 (S.D. Fla. Sep. 7, 2021)).

**B. The district court abused its discretion by using an erroneous standard for "available caregiver" when it failed to consider the degree of care needed by Appellant's father in determining whether Appellant's son is an "available caregiver."**

In this case, the Government conceded that Mr. Jose Lorenzo is incapacitated. ECF 783, p. 1 ("From the materials provided by the defendant, it seems clear the defendant's father has been incapacitated by his health conditions."). Mr. Jose Lorenzo suffers from an extensive list of medical maladies that require round-the-clock care. *Supra* at 4-8. His basic activities of daily living require assistance by another person. Mr. Jose Lorenzo's sleep is frequently interrupted, requiring his caregiver be present overnight: "I stay up with him all night . . . . He often has stomach pain, pain in his bones, he can't sleep, it is always like that for him." ECF 778-4. Pain influx and at home treatment require a careful eye to oversee medical care. Because he is immobile, frequent adjustment is required to avoid bedsores and other skin injuries. Aid with transition from chair to bed to bathroom prevents Mr. Jose Lorenzo from developing wounds and infections.

The plain language and understanding of the requirement of an "available caregiver" is incompatible with the district court's finding that Mr. Elmer was available to care for his grandfather. That is because the district court failed to consider whether Appellant's son was available to provide necessary care to Appellant's father. In *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016), the Fourth Circuit conducted a similar analysis of the plain language of the remarkably similar phrase "available to provide care and physical custody" in the context of determining a suitable custodian requirement for an "unaccompanied alien child" (UAC). The Fourth Circuit reasoned:

> Critically, the UAC definition does not refer, as Beltrán suggests, to a parent's availability in a general sense. Rather, it asks whether a parent is "available *to provide care and physical custody*." *See* 6 U.S.C. § 279(g)(2)(C)(ii) (emphasis added). The word "care" generally means "[t]he provision of what is necessary for the health, welfare, maintenance, and protection of someone or something." *See* The New Oxford American Dictionary 258 (8th ed. 2004). Consequently, to be "available to provide care" for a child, a parent must be available to provide what is necessary for the child's health, welfare, maintenance, and protection. And a parent who is not "capable of providing for the child's physical and mental well-being"—as mandated by the suitable custodian requirement of 8 U.S.C. § 1232(c)(3)(A)—is not available to provide what is necessary for the child's health, welfare, maintenance, and protection.
>
> In these circumstances, we are unable to conclude as a matter of law that R.M.B. is not a UAC.

*Cardall*, 826 F.3d at 734.

18

The Fourth Circuit's analysis of the term "available to provide care" in *Cardall* applies equally to the "available caregiver" standard of U.S.S.G. § 1B1.13(b)(3)(C). That determination is incompatible with the district court's finding that an adult grandchild who lives "within hours" of an incapacitated grandfather who requires full-time care was only "inconvenience[d]" and met the definition of an available caregiver. In failing to consider the care needed by Appellant's father in determining who would constitute an "available caregiver," the district court applied an erroneous standard to determine a caregiver's availability. The plain language of U.S.S.G. § 1B1.13(b)(3)(C) does not support the district court's analysis.

In this case, Mr. Elmer being "within hours" of providing care to Mr. Jose Lorenzo does not equate to availability as a caregiver. Mr. Jose Lorenzo's condition requires daily, round-the-clock care. As Mr. Elmer (and his siblings) swore, Mr. Elmer is not available to provide such care. Mr. Elmer cares for and provides for his own family including young children. The time traveled roundtrip between where Mr. Elmer lives and Mr. Jose Lorenzo lives, equates to over eight hours. Back and forth travel between his grandfather's residence and his residence makes it impossible for Mr. Elmer to provide the level of care Mr. Jose Lorenzo medically requires. Further, Mr. Elmer cannot care for Mr. Jose Lorenzo at a less frequent rate,

19

such as three times a week. Anything less than 24-hour care conflicts with the medical professional's recommendation and could result in a range of complications, including those that are life-threatening. The district court unreasonably determined that Mr. Elmer is available to care for Mr. Jose Lorenzo in Catacamas while maintaining a residency in Comayagua.

District courts throughout the country have recognized that a caregiver's availability is relative to the needs of the incapacitated. *See United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) (the district court found that although his incapacitated mother had day-time home health aides, Mr. Bucci was an available caregiver because *she required over-night care*.); *United States v. Mendoza*, 16-CR-00459-SI-1, 2022 WL 1605671 (N.D. Cal. May 20, 2022) (the district court found that Mendoza showed "he is the only available caregiver who can provide the assistance that *his father requires*" because neither his sister nor mother "can afford to quit her full-time job in order *to provide the daily level of care required by his father*." Only Mendoza would be able to "'provide round the clock care for his father ...'") (emphases added); *United States v. Vanlaar*, 1:13-CR-119, 2022 WL 2290618 (M.D.N.C. June 24, 2022) (the district court found that while Mr. Vanlaar's two brothers "could theoretically provide more care for their mother, to do so would

require them to move from Maryland where they are employed or to travel many times a month from Maryland. [A brother] would likely have to stop providing childcare for his grandchildren. Neither is 'available' to provide the *degree of care* Mrs. Van Laer needs.") (emphasis added).

Further, alternate caregivers have been found unavailable in similar circumstances. In *United States v. Hernandez*, No. 1:16cr20091, 2020 WL 4343991 (S.D. Fla. Apr. 3, 2020), the district court granted compassionate release where Mr. Hernandez was the only feasible caregiver for his 84-year-old mother, who was blind and suffered from mobility issues. Mr. Hernandez had two brothers as possible alternate caregivers, yet both were found to be unavailable. One had recently had a psychotic break and was found not to be a suitable caregiver. More pertinent to the circumstances here, the other brother *lived three hours away, worked full time, and could not provide the personal care and assistance with the activities of daily living that their mother required. Id.* Unlike here, the impossibility of traveling while maintaining employment *and* meeting the needs of his grandmother were factors in the district court's decision making in *Hernandez*.

Mr. Jose Lorenzo's specific care needs were not considered by the district court when it determined that Mr. Elmer was an available caregiver. That failure

constituted an erroneous application of the plain language of the standard of an "available caregiver" in U.S.S.G. § 1B1.13(b)(3). The district court therefore abused its discretion.

**C. The district court abused its discretion by making an unreasonable finding of fact that Appellant's son was an available caregiver despite uncontroverted and overwhelming evidence that he was unavailable.**

In its order, the district court reduced Mr. Elmer's reasons for unavailability to "ordinary constraints of [] daily li[fe]." ECF 788, p. 2. This is an incorrect and unreasonable finding of fact. Mr. Elmer lacks the accommodations and space for Mr. Jose Lorenzo to be relocated to his small, one bedroom, one bath apartment in Comayagua. ECF 785-5. Relocation to Mr. Elmer's would also take Mr. Jose Lorenzo away from his established relationships with health professionals in Catacamas. At Mr. Elmer's, Mr. Jose Lorenzo would not live in accordance with his medical treatment, which includes 24-hour care. Because Mr. Elmer is employed full-time and has childcare commitments, he does not have the availability to care for his grandfather if he relocated. *See Hernandez*, 2020 WL 4343991. His unavailability does not stem from any "inconvenience" in his daily life, but rather his own livelihood, work, and family obligations.

22

Additionally, the district court held Mr. Elmer to an impossible standard when it overlooked his statement and circumstances that make it impossible for him to relocate to Catacamas due to financial and childcare restraints. Mr. Elmer is currently employed with a job that allows him to provide for himself and his young children. To leave his job would destabilize his income and economic responsibilities for his children. ECF 785-5.   In Honduras, "[j]ob opportunities are scarce."[2] Requiring Mr. Elmer to leave his current employment is not simply an "ordinary" change for him to make. ECF 788 at 2. Secure employment is the only reason Mr. Elmer and his family *survive*. Like his siblings, who the district court found to be unable to relocate from the United States for economic reasons, relocation to a rural city four hours away imposes an extraordinary and unreasonable burden on Mr. Elmer. *See Vanlaar*, 1:13-CR-119, 2022 WL 2290618.

To the extent the district court determined that Mr. Elmer could be his grandfather's round-the-clock caregiver, that determination was incompatible with the evidence in the record, including that Mr. Elmer needs to remain in a city in Honduras four hours away from Mr. Jose Lorenzo, must maintain full-time

---

[2] Adam Isacson, et al., *Halfway to the U.S.: A Report from Honduras on Migration*, WASHINGTON OFFICE ON LATIN AMERICA (June 2, 2023), www.wola.org/wp-content/uploads/2023/06/2023-06_honduras_report.pdf

employment in that city, and has his own childcare requirements and financial responsibilities to his immediate family. For those reasons, the district court's findings of fact were unreasonable, and the district court abused its discretion.

In Appellant's case, the district court relied on the analysis from another district court in *United States v. Gonzalez*, 2021 WL 4066897, at \*5 (S.D. Fla. Sep. 7, 2021) to find Mr. Elmer is an available caregiver. Appellant's case is dissimilar to *Gonzalez*. In *Gonzalez*, Ms. Gonzalez did not argue or provide support for the notion that her "husband cannot continue to care for the children due to incapacitation *or that he cannot otherwise secure different employment that would lessen* the time spent away from his children, should the need arise." *Id.* (emphasis added). Ms. Gonzalez also had an available maternal half-brother who resided in Hallandale Beach, Florida—the same city as her children. *Id.* at 5. The physical availability of alternate caregivers and lack of explanation as to why the father could not change his employment circumstances led the court to find "the suggestions that [Ms. Gonzalez's] husband find new, more flexible employment, or that more distant [(relation)] family members care for her children, may pose a less-than-ideal solution . . . . [but] a finding of compassionate release cannot rest solely on avoiding such inconvenience for a convicted inmate's family." *Id.* In essence, Ms. Gonzalez's

24

circumstances created a hardship to her spouse, but alternate caregivers had always existed and participated in providing care, even before she became incarcerated.

Mr. Elmer's circumstances plainly render him unavailable to provide the constant assistance of daily life tasks that Mr. Jose Lorenzo requires. At the time of Appellant's arrest, the circumstances here did not exist nor has Mr. Elmer ever taken care of Mr. Jose Lorenzo. Distinct from *Gonzalez*, Mr. Elmer and his siblings provided specific information to the district court about the economic and employment barriers present in Honduras which bar Mr. Elmer from risking secure employment in Comayagua and threaten the financial security he provides to his young children. Additionally, unlike here, Ms. Gonzalez's half-brother lived in the same city as her children, not four hours away. No one was required to relocate under the analysis in *Gonzalez*. And further distinguishing the reasoning in *Gonzalez,* two willing and able caregivers lived in the same household as the persons being cared for. Mr. Elmer's circumstances are entirely different than those presented in *Gonzalez*. Thus, the district court's reliance on *Gonzalez* was misplaced.

For these reasons, the district court erred in its findings of fact that Mr. Elmer was an available caregiver for his grandfather pursuant to U.S.S.G. § 1B1.13(b)(3)(C).

**CONCLUSION**

Based upon the argument and authority presented above, this Court should find that the district court abused its discretion in applying the incorrect legal standard and finding Appellant's son was an available caregiver to Appellant's incapacitated father and should vacate the denial of Appellant's motion for sentence reduction and remand the case for reconsideration of his motion.

Respectfully Submitted,

JOSEPH F. DEBELDER
FEDERAL PUBLIC DEFENDER

*s/Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Fla. Bar No. 193800

*s/Laura B. Silva*
LAURA B. SILVA
D.C. Bar No. 90012716
227 N. Bronough Street
Suite 4200
Tallahassee, FL 32301
(850) 942-8818
(850) 942-8809 Fax
Attorneys for Appellant

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[**X**] this brief contains 4,937 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Equity A, 14 point, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*s/Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Fla. Bar No. 193800

27

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Alicia Forbes, 21 East Garden Street, Suite 400, Pensacola, Florida 32502, and by U.S. Mail to Rufino Robelo-Galo, Reg. No. 21006-017, c/o FCI Atlanta 601 McDonough Blvd SE Atlanta, GA 30315, all on this 16th day of August, 2024.

*s/Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Fla. Bar No. 193800

28